## Chesapeake & Ohio Railway Company, et al. v. Isaacs, By et al.

(Decided May 12, 1916.)

### Appeal from Boyd Circuit Court.

Railroads—Death of Person on Track—Licensee—Trespasser—Question for Jury.—In an action for damages for personal injuries to a person walking along a railroad track, evidence examined and held that the question whether plaintiff was a trespasser or licensee was properly submitted to the jury.

PROCTOR K. MALIN and WORTHINGTON, COCHRAN & BROWNING for appellants.

JOHN W. WOODS for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER.—Affirming.

This is a personal injury action, in which plaintiff, Bascom Isaacs, was awarded damages against the defendants, the Chesapeake & Ohio Railway Company and William Kinney, in the sum of $3,000.00. The defendants appeal.

The question whether or not plaintiff was a licensee was submitted to the jury. The only error relied on is the failure of the trial court to hold, as a matter of law, that plaintiff was a trespasser.

The facts are as follows: Plaintiff, a lad fifteen years of age, was employed by the Solvay Coke Company. On the morning of September 15th, 1913, he, in company with his father, left his home for the purpose of going to his place of employment. While going west on the company's east bound track he saw a train approaching. He then crossed over to the west bound track, and when he reached a point about 78 feet east of what is known as the "Sweeney crossing," he was overtaken and run over by a freight train going west on the west bound track. Besides other injuries, the accident resulted in the fracture of his left leg and the loss of his right leg. The evidence shows that the accident happened about four or five hundred feet east of the city limits of Ashland, and about eight hundred feet east of what is known as the "underground crossing." The place of accident is also shown to be about two thousand feet west of Cliffside park, four or five hundred feet from the Kentucky Solvay Plant and about twelve or fifteen hundred feet from the Bates-Rodgers Construction Company's plant on the Ohio river bank. It also appears that the city of Ashland is built up in squares to its city limits. At that time the Kentucky Solvay Company employed between two and three hundred men. The O'Kelly Brick Company's plant, which is located about one thousand feet west from the accident, employed from twenty-five to thirty men. The Bates-Rodgers Construction Company's plant employed between five and six hundred men. Between the city limits of Ashland and Cliffside Park, a distance of two thousand or twenty-five hundred feet, there are eighteen or twenty houses. Between these houses and the railroad tracks is the county road, which runs parallel with the railroad tracks. Across the county road

from where the accident happened is located Sweeney's store, which enjoys considerable trade among the people living in the neighborhood and working at the various plants. Many of these people cross and walk along the railroad tracks in going from their working places and homes to the store. On the north side of the track and opposite Cliffside Park is a small village, consisting of twenty-eight or thirty houses. Cliffside Park is a place of amusement and is patronized both by people living at Ashland and Catlettsburg and by those occupying the intervening territory. Ashland is a city of about ten thousand people, while Catlettsburg, which is located about a mile and three-fourths east of where the accident occurred, is a city of thirty-five hundred people. According to plaintiff's evidence, the track at the place of accident between Sweeney's crossing and Solvay crossing is used daily by from one hundred and fifty to three hundred people. Leading from the railroad track to the Solvay plant are three or four paths, which extend from Sweeney's crossing to a point two or three hundred feet east thereof. The Kentucky Solvay and Bates-Rodgers plants were in operation both day and night. Their employes would frequently use the railroad tracks in going to and from work. Mr. Sweeney, the proprietor of the store near where the accident occurred, says that there was no time of the day when some one could not be seen on the tracks near the crossing. On the other hand, the evidence for the defendants is to the effect that, by actual count made shortly before the trial, under conditions similar to those at the time of the accident, the number of people making a longitudinal use of the railroad track was from twenty-five to fifty per day. It was further shown that the county road south of the tracks afforded a safe and easy passway to people going east and west; that the railroad tracks were ballasted and there was no path along them.

This case is not controlled by the rule applicable to persons injured while walking over railroad bridges. Curd's Admx. v. C., N. O. & T. P. Ry. Co., 163 Ky. 104, 173 S. W. 335; Fields v. L. & N. R. R. Co., 163 Ky. 673, 174 S. W. 41. It is controlled by the rule applicable to persons injured while walking along the railroad tracks that are laid on the ground, as announced in the recent cases of Chesapeake & Ohio Ry. Co. v. Warnock's Admr., 150 Ky. 74, 150 S. W. 29; Corder's Admr. v. C., N. O.

& T. P. Ry. Co., 155 Ky. 536, 159 S. W. 1144; Chesapeake & Ohio Railway Co. v. Danen's Admr., 159 Ky. 296, 167 S. W. 125; Willis' Admx. v. L. & N. R. R. Co., 164 Ky. 124, 175 S. W. 18. In these cases we have laid down the rule that the question whether or not an injured party is a mere trespasser or a licensee depends, not on the fact that the accident happened in a city or incorporated town, but on the number of persons using the track at the place of accident, or, as said in the case of Willis' Admr. v. L. & N. R. R. Co., *supra,* "running through all these opinions will be found the thought that it is the habitual use of the track by large numbers of persons rather than the location of the track that creates the distinction between trespassers and licensees." Here the accident occurred between the towns of Ashland and Catlettsburg and about a block east of the city limits of Ashland. The intervening territory between Ashland and Cliffside Park is occupied by eighteen residences. Large numbers of employes were working at the neighboring manufacturing plants. One of those establishments was operated night and day. According to plaintiff's evidence, the track at the place of accident was daily used by from one hundred and fifty to three hundred people, and during the hour when the accident occurred was customarily used by more persons than at any other time during the day. Notwithstanding the fact, therefore, that the accident did not occur within the limits of an incorporated town, it is clear, we think, that the evidence concerning the nature and occupancy of the territory adjacent to the tracks, and the habitual use of the tracks by the large number of persons who had occasion to travel to and from their residences and places of employment, or to go to Sweeney's grocery for supplies, or to travel to and from Ashland, was sufficient to justify submitting to the jury the question whether or not the presence of persons on the track at the place of injury should have been anticipated by the defendants, and, therefore, imposed upon them the duty of maintaining a lookout, of having the train under reasonable control, and of giving timely warning of its approach.

Judgment affirmed.